**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAMELA BLAIN,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 06-1247** |
| | : | |
| **SMITHKLINE BEECHAM CORPORATION** | : | |
| **d/b/a GLAXOSMITHKLINE** | : | |

**MEMORANDUM OPINION**

Savage, J.                                                                    April 25, 2007

Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), the

Pennsylvania corporation that manufactures the antidepressant drug Paxil, has moved to

transfer this product liability action brought by the plaintiffs Pamela Blain and Ronald Blain,

Kansas residents, seeking damages for the death of their son, Trevor, when he committed

suicide as a result of using the drug in Kansas.  GSK contends that the District of Kansas

is the more appropriate forum because the events at issue occurred in Kansas where the

plaintiffs and their son were residing and a significant number of non-party witnesses and

documents are located.  Opposing transfer, the plaintiffs argue that this case should

remain in this district where GSK is headquartered, innumerable documents related to

Paxil are stored, and a multitude of current and former GSK employees work or reside.

After weighing all relevant factors and giving significant consideration to the

plaintiffs' preference, the balance tips in favor of transferring the case to the District of

Kansas.  Therefore, GSK's motion to transfer will be granted.

**Background Facts**

The plaintiffs allege that, at the age of eleven, their son committed suicide as a

result of his ingestion of Paxil.  The gist of their claims is that despite its specific knowledge

of Paxil's association with the increased risk of suicidality in pediatric patients, GSK failed to warn doctors, the medical community and the public of this danger.[1] After his physician prescribed Paxil, the plaintiffs' son took the drug for approximately three months.[2] During that time, he experienced suicidal thoughts, culminating in suicide.[3] All of these events took place in Kansas.[4]

GSK is incorporated in Pennsylvania and maintains its North American headquarters in Philadelphia.[5] Its document depository containing Paxil documents is located in Philadelphia.[6] Numerous GSK employees, including the CEO of GSK, scientists involved in clinical trials for Paxil, its liaison with the FDA regarding Paxil from 1995 to 2003, and others associated with the drug, work and live in or near Philadelphia.[7] As the plaintiffs characterize it, Philadelphia is the "nerve center" for GSK's labeling, promotion and distribution of Paxil.[8]

### Legal Standard

A defendant moving for transfer of venue bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum; (2) the

---

[1] Plaintiffs assert claims of negligence (count I); negligent pharmaco vigilance (count II); strict liability (count III); breach of express warranty (count IV); fraud (count V); survival (count VI); negligent infliction of emotional distress (count VII); and loss of consortium and loss of income (count VIII).

[2] *Compl.* ¶ 42.

[3] *Id.*

[4] *Pls.' Br.* at 12.

[5] *Pls.' Br.*, Exs. A, G.

[6] *Pls.' Br.* at 4, Ex. H at 9.

[7] *Pls.' Br.* at 5-6.

[8] *Id.* at 5.

proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of convenience tips in favor of transfer.  *Jumara*, 55 F.3d at 879-80.

Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and, (9) "public interest" factors, such as congestion of court dockets and the relationship of the jury and the community to the underlying district.  *Jumara*, 55 F.3d at 879-80.  Depending on the nature and facts of the case, these factors overlap and are intertwined.

Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Despite this wide latitude, a transfer motion is not to be granted without a careful weighing of factors favoring and disfavoring transfer.  *See Shutte*, 431 F.2d at 24-25.

**Analysis**

Only if the action could have been brought in the District of Kansas can it be transferred there.  Thus, the threshold question is whether that district is a proper venue.

What is a proper venue in diversity cases is defined in 28 U.S.C. § 1391, which sets out three bases for venue: (1) where all defendants reside in the same state, the district where any defendant resides; (2) the district where a substantial part of the events or omissions giving rise to the claim occurred; and (3) in the case where there is no other district in which the action can be brought, the district where a defendant is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1391(a).

GSK is not a Kansas resident.  However, a substantial part of the events in this case happened in that state.  The drug was marketed and prescribed in Kansas and the injury occurred there.  At the time the plaintiffs' son took Paxil and committed suicide, the plaintiffs and their son resided in Kansas.[9]  Therefore, because a substantial part of the events giving rise to the claim occurred in Kansas, the plaintiffs could have brought their claim in the District of Kansas if they had so chosen.[10]

The inquiry now turns to weighing the private and public interest factors to determine which forum is more convenient for the parties and the witnesses, and will serve the interest of justice.

*(1) The plaintiffs' choice of forum*

The plaintiffs' choice of forum typically receives "paramount consideration."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  However, the plaintiffs' choice is

---

[9] *Pls.' Br.* at 12.

[10] Asserting that the plaintiffs' claim could be brought in Kansas, GSK concedes that it is subject to personal jurisdiction in that district.  *Def.'s Br.* at 8.

given less deference where they do not live there and none of the operative facts occurred there. *McMillan v. Weeks Marine, Inc.*, No. 02-CV-6741, 2002 WL 32107617, at *1 (E.D. Pa. Dec. 2, 2002) (Savage, J.).

The plaintiffs have no real connection to this district.  They do not reside in Pennsylvania and several significant facts did not occur here.  On the other hand, they have several connections to Kansas.  The plaintiffs' son's doctor prescribed the Paxil to him in Kansas.  He ingested the drug and committed suicide there.  The plaintiffs reside there.

The parties do not agree regarding the magnitude and type of decisions regarding Paxil that GSK made in this district.  It is undisputed that at least *some* of those decisions occurred here.[11]  GSK does not deny that decisions regarding Paxil were made in Philadelphia, stating that "most" decisions occurred outside of Pennsylvania.[12] GSK cannot deny that its pediatric clinical trials, which are directly related to the present case, took place in Philadelphia.  Accordingly, a number of operative facts occurred in Pennsylvania.

In this case, the plaintiffs' choice of forum need not be given "paramount consideration" because they do not live in this district and have had no contact with this district.  Nevertheless, their choice will still be accorded some deference because some of the operative facts of the case occurred in this district.  Therefore, while not rising to the level of "paramount consideration," the plaintiffs' choice runs slightly in their favor.

---

[11] GSK has seven offices in the Philadelphia area.  One of its two operational headquarters is in Philadelphia.

[12] *Def.'s Br.* at 12.

*(2) The defendant's preferred forum*

GSK prefers the District of Kansas because it can compel the attendance of essential non-party witnesses to testify at a trial there and would not be able to do so if the case were tried in Pennsylvania.[13]   A number of non-party factual witnesses reside in Kansas.   These witnesses include the plaintiffs' son's physicians and nurses, family members, and the personnel of the schools he attended, each of whom has essential testimony.[14]   Because they are outside the geographic reach of this district's subpoena power, GSK may not have access to these witnesses at trial.   *See* Fed. R. Civ. P. 45(b)(2).   If the case is transferred, the District of Kansas will have subpoena power over the witnesses who reside within that district.   *Id.* (providing district court subpoena power over "any place within the district of the court by which it is issued").   Therefore, the defendant's preferred forum weighs in its favor.

*(3) The place where the claim arose*

Where the claim arose implicates other factors in the analysis.   It involves questions of access to proof, choice of law, convenience of the parties and the witnesses, availability of witnesses, and efficiency concerns.   Hence, determining the place where the claim occurred will inform the evaluation of these other factors.

GSK asserts that the claim only arose in Kansas where the drug was prescribed, purchased and consumed, and where the plaintiffs' son subsequently committed suicide.[15]

---

[13] *Id.* at 13.

[14] *Id.* at 18-19.   For example, the testimony of the medical professionals may be pertinent to GSK's learned intermediary defense.   *Id.* at 18.

[15] *Def.'s Br.* at 16.

Any warnings about Paxil were received by the plaintiffs' son's physician in Kansas, not Pennsylvania.[16]

Conceding that part of the claim arose in Kansas, the plaintiffs assert that the claim also arose in Pennsylvania.[17]  They point to GSK's decisions relating to the labeling, promotion and distribution of Paxil that were made in the Philadelphia area, at GSK's "nerve center."[18]  These decisions are relevant to the plaintiffs' warning defect claim, particularly if they show how the defendant made many of its decisions concerning the Paxil warnings.[19]  However, GSK counters that the plaintiffs have not demonstrated that GSK's decisions occurred in the Philadelphia area, "given that the design, research, development, marketing, manufacture, and sales of Paxil took place *mostly outside* of Pennsylvania."[20]  Yet, GSK does not deny that other decisions and activities regarding Paxil occurred in this district.

Despite GSK's statement that Paxil does not have a "unique connection to Pennsylvania,"[21] there are numerous links between the drug and GSK's operations in this district.  However, even though *some* of the decisions may have taken place in the Philadelphia area, "the most significant contacts and relationship to the liability issue is [the plaintiff's] home state."  *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 193 (E.D. Pa.

---

[16] *Id.* at 16.

[17] *Pls.' Br.* at 12.

[18] *Id.* at 5, 12.

[19] *Id.* at 12.

[20] *Def.'s Br.* at 12 (emphasis added).

[21] *Id.* at 6.

2007) (Savage, J.).  Therefore, the weight of contacts in this case favors Kansas, which is the plaintiffs' home state and the defendant's preferred forum.

### (4) The relative ease of access to the sources of proof

GSK will have greater difficulty than the plaintiffs in accessing sources of proof in Kansas.  As already discussed, the fact witnesses located in Kansas may not be compelled to testify at a trial in Pennsylvania.[22]  Additionally, the plaintiffs' son's medical records and the investigative reports for his suicide are located in Kansas.[23]

Characterizing GSK's argument as speculation, the plaintiffs argue that GSK has not shown that any of the Kansas witnesses will not be available for trial.[24]  On the other hand, although GSK has not shown that any of the Kansas witnesses will be unavailable for trial, there is no guarantee that those witnesses will come to Pennsylvania to testify.

The plaintiffs point out that many witnesses, namely GSK employees, reside in the Philadelphia area,[25] and GSK's document depository is located in Philadelphia.[26]  Thus, the plaintiffs assert that the ease of access to sources of proof weighs against transferring the case.

Plaintiffs' concern that GSK may not make its employees available in the District of Kansas is unfounded because GSK's employees are party witnesses who are required to comply with a subpoena regardless of where they reside.  Fed. R. Civ. P. 45(c)(3)(A)(ii).

---

[22] See also Def.'s Br. at 13.

[23] Id. at 19.

[24] Pls.' Br. at 14.

[25] Id. at 5-6.

[26] Id. at 4, 16.

As to the documents in GSK's depository, they may be authenticated and explained during discovery, much of which has already taken place. There should be no difficulty in the plaintiffs using those documents at trial.

Although there are some liability witnesses in Pennsylvania, witnesses essential to proving liability and damages are located in Kansas. The questions that must be resolved to determine liability are numerous and complex. They implicate the plaintiffs' son's psychological and medical histories, his pharmacological regime, the role of his physician and his physical characteristics. The sources of this essential information are in Kansas and not in Pennsylvania. On balance, the sources of proof factor weighs in favor of transfer.

### (5) The convenience of the parties as demonstrated by relative financial status and physical location

Kansas is more convenient in terms of financial burden and physical location for the plaintiffs. The plaintiffs will not need to travel if the case is tried in Kansas because the plaintiffs currently reside there.[27]

Pennsylvania is a more convenient location for GSK's witnesses physically, but GSK's financial status allows it to absorb the cost of traveling to a farther destination more easily than the plaintiffs. Many of the defendant's employees will need to travel regardless of whether the case is tried in Kansas or Pennsylvania because the defendant's employees are located throughout the world and may need to travel from locations other than

---

[27] *Def.'s Br.* at 16-17.

Pennsylvania.[28]   Therefore, the District of Kansas is more convenient in terms of the physical location for the plaintiffs and not significantly inconvenient for the defendant.

*(6) The availability of compulsory process for the attendance of witnesses*

As discussed in the consideration of the defendant's preferred forum, GSK will likely have more difficulty in compelling the attendance of the non-party witnesses who reside in Kansas than the plaintiffs will have in compelling the defendant's employees to appear at trial.  Therefore, the availability of compulsory process for the attendance of witnesses factor weighs in favor of transfer.

*(7) The convenience of the witnesses*

Numerous liability and damages witnesses reside in Kansas.  These witnesses include the plaintiffs' son's doctor who prescribed the Paxil, the medical personnel that attended him after he committed suicide, his family and the personnel of the school he attended during the time he was taking Paxil and committed suicide.[29]  These witnesses will be more inconvenienced by having to travel to Philadelphia as opposed to remaining in Kansas for a trial.

A number of GSK employee-witnesses will likely need to travel regardless of whether the trial is in this district or in the District of Kansas.  While the plaintiffs have identified approximately eleven witnesses from GSK that reside in or around Philadelphia,[30]

---

[28] *Id.*

[29] *Id.* at 17-19.

[30] *Pls.' Br.* at 2.

many other GSK employees reside in the United Kingdom and North Carolina.[31]  For many of these witnesses, Philadelphia will not be any more convenient than Kansas.

The plaintiffs have identified several third-party witnesses who will testify at trial. These witnesses reside in Connecticut, Maryland, Massachusetts, Texas and Pennsylvania.[32]   For some of these witnesses, Philadelphia will not be any more convenient than Kansas.

Because many factual witnesses reside in Kansas and will be less inconvenienced by having the case tried in Kansas, and other witnesses will likely need to travel regardless of whether the case is tried in this district or in Kansas, the District of Kansas is a more convenient forum for the witnesses.  Therefore, this factor weighs in favor of transfer.

*(8) The practical problems that make trial of a case expensive and inefficient*

The plaintiffs assert that this case will be more efficiently and inexpensively disposed of in Pennsylvania due to the consolidation of eight cases in this district and the fast track on which this court has set the case.[33]  The consolidation was solely for discovery and not trial.  Much of the discovery on GSK's knowledge and warnings has already been conducted.  Discovery of liability and damages issues unique to the plaintiffs will take place in Kansas.  Thus, there is no decided benefit in terms of efficiency and costs if this case remains in this district.

---

[31] *Def.'s Br.* at 17.

[32] *Pls.' Br.* at 6-7.

[33] *Id.* at 16-17.

11

*(9) The "public interest" factors*

The parties disagree whether Kansas or Pennsylvania law will apply to the plaintiffs' claims.[34]  GSK asserts that Kansas law applies because Kansas has the most significant contacts and relationship to liability issues.[35]  On the contrary, the plaintiffs argue that "Pennsylvania law may apply to many aspects of plaintiffs' claims."[36]  They assert that only slight differences exist between the laws of Pennsylvania and Kansas.[37]

Both Kansas and Pennsylvania citizens have an interest in this litigation. GSK asserts that Kansas has a stronger interest because the injuries occurred to a Kansas citizen.[38]  On the other hand, the plaintiffs assert that Pennsylvania's interest is stronger because it does not want to become a "haven for fraudulent corporations."[39]

Applying a choice of laws analysis in deciding that class certification was not appropriate, I determined that the state having the most significant contacts and relationship to the issue of liability is the plaintiff's home state at the time the cause of action accrued and concluded that "the foreign state's interest in protecting its citizens outweighs Pennsylvania's regulatory concerns."  *Blain*, 240 F.R.D. at 193-94.  Therefore, while both states have an interest in the litigation, Kansas' interest outweighs Pennsylvania's.

---

[34] *See Def.'s Br.* at 20-21; *Pls.' Br.* at 19-20.

[35] *Def.'s Br.* at 20.

[36] *Pls.' Br.* at 19-20.

[37] The plaintiffs concede that Kansas recognizes strict liability for failure to warn against drug manufacturers while Pennsylvania does not.  *Plaintiffs' Motion for Class Certification, App'x* I at xxv, xii, *filed in Blain v. Smithkline Beecham Corp.*, Civ. A. No. 06-1247(E.D. Pa.) (*Document No. 59*).

[38] *Def.'s Br.* at 20-21.

[39] *Pls.' Br.* at 18-19.

The parties disagree whether the Eastern District of Pennsylvania or District of Kansas is more congested.  There is no significant difference in the congestion or disposition rate between the two districts.  Therefore, the congestion factor is neutral.

## Conclusion

The private and public interest factors of convenience and fairness weigh in favor of transferring the case to the District of Kansas where this action could have been brought.  Accordingly, in the interest of justice, the motion to transfer venue will be granted and this case will be transferred to the District of Kansas.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAMELA BLAIN, *et al.*** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 06-1247** |
| | : | |
| **SMITHKLINE BEECHAM CORPORATION** | : | |
| **d/b/a GLAXOSMITHKLINE** | : | |

## ORDER

AND NOW, this 25th day of April, 2007, upon consideration of Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline's Motion to Transfer Venue (Document No. 72), and the plaintiffs' response, it is **ORDERED** that the motion to transfer is **GRANTED** and this matter is **TRANSFERRED** to the District of Kansas.

 /s/ Timothy J. Savage
TIMOTHY J. SAVAGE,  J.